

ENTERED
02/09/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| HUMBERTO SAENZ JR; fdba PIZZA § | CASE NO: 13-70423 | |
| PATRON INC; fdba ESTRELLA § | | |
| VENTURES, INC. DBA PIZZA PATRON; § | | |
| aka SAENZ; fdba ARMAR ENTERPRISES § | | |
| INC, *et al* § | | |
|    Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| JOSE MARIA GOMEZ § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 13-07024 | |
| § | | |
| HUMBERTO SAENZ JR, *et al* § | | |
|    Defendant(s) § | | |

## MEMORANDUM OPINION

Defendant International Bank of Commerce (IBC) has filed a motion for summary judgment against Jose Gomez and JMG JMG Ventures LLC d/b/a Pizza Patron (Plaintiffs) under Federal Rule of Bankruptcy Procedure 7056. On January 26, 2015 the Court held a hearing on the summary judgment motion. Plaintiffs have—just barely—presented a prima facie case for fraud. Accordingly, IBC's motion for summary judgment is denied.

### Factual Background

Humberto Saenz, Jr. operated a Pizza Patron restaurant in Rio Grande City. Pizza Patron Inc. (PPI) is the franchisor of Pizza Patron franchises. At various times between 2005 and 2012, Saenz operated up to six Pizza Patron franchises in South Texas. In the spring of 2009, Gomez and Saenz began negotiating for the purchase of the Rio Grande franchise. (ECF No. 1-1; ECF No. 54 at 3). Gomez alleges that during these negotiations Saenz falsely represented that he was the franchise representative of PPI for the South Texas region. (ECF No. 1-1 at 3). The parties

reached a preliminary agreement for Gomez to purchase the franchise location for $350,000 by May of 2009.

As a result of this agreement, Saenz provided Gomez various documents reflecting the financial status of the restaurant. Gomez alleges that IBC helped Saenz create a 2009 Income Statement dated January through September 30, 2009. According to the statement, the Rio Grande franchise generated $107,505.16 in net income for that time period. (ECF No. 60 at 54). On or about October 15, 2009, Gomez signed a Purchase-Sale Agreement for the Pizza Patron franchise in Rio Grande City as well as its equipment and inventory. To finance the transaction, Gomez obtained an SBA loan from Lone Star National Bank for $287,200.00 on or about February 8, 2010.[1]

On March 8, 2011, Gomez realized he could not afford to keep the restaurant open and closed its doors. (ECF No. 1-1 at 4). Two days later, employees of Pizza Patron Corporate office inspected the franchise. Gomez alleges that Saenz instructed Gomez that he could not be present for the inspection and that Saenz would attend in his stead. *Id.* On March 10, 2011 Saenz allegedly removed equipment and inventory from the restaurant without permission. On March 11, 2011, Saenz allegedly installed new equipment in the restaurant and reopened the restaurant. By April 11, 2011, Saenz held himself out as the new owner of the Rio Grande City Pizza Patron. Gomez claims that Saenz never purchased the franchise back from Gomez. *Id.*

*Procedural Posture*

On or about September 11, 2011, Plaintiffs filed suit against Saenz, Estrella Ventures, Inc., and Lone Star National Bank in the 381st District Court, Starr County, Texas. IBC was added as a defendant pursuant to Plaintiffs' Amended Original Petition filed on December 4, 2012. (ECF No. 54). Saenz filed for chapter 7 bankruptcy on August 27, 2013. (Case No. 13-

---

[1] Gomez applied for the loan on August 19, 2009. (ECF No. 54-7).

70423; ECF No. 1). The lawsuit was subsequently removed to bankruptcy court on November 19, 2013. (ECF No. 1). On December 15, 2014, IBC filed its motion for summary judgment. The motion stated there was no genuine issue of material fact regarding Plaintiffs' fraud claim and that Plaintiffs' failed to produce sufficient evidence to support their claim.

### Summary Judgment Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2] Fed. R. Civ. P. 56(c)(1). A court is not required to scour the record for factual issues that might support a litigant's position; it is the litigant's

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

obligation to direct the court's attention to the relevant evidence. *Perez v. Johnson*, 122 F.3d 1067, 1067 (5th Cir. 1997). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir.2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara,* 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon,* 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301 (5th Cir.2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S,* 520 F.3d at 412. Upon an adequate showing of insufficient

evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex,* 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.,* 431 F.3d 191, 197 (5th Cir.2005). To defeat a summary judgment motion, Plaintiffs must make a showing sufficient to establish the putative existence of every element that is essential to their case. *Celotex*, 477 U.S. at 322. In other words, they must present a prima facie case. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994). Plaintiffs must produce sufficient evidence to allow a fair-minded jury to return a verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Otherwise, "there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

**Analysis**

Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Plaintiffs must establish the putative existence of each element of fraud in order to defeat the summary judgment motion. Because Plaintiffs have presented a prima facie case, IBC's motion for summary judgment is denied.

    I. *There is no dispute that a material statement was made.*

The first element of fraud is whether a material representation was made. The parties do not dispute, for summary judgment purposes, that an IBC employee helped prepare an Income Statement showing that the Rio Grande City Pizza Patron made a net profit of $107,505.15 from January through September 30, 2009. (ECF No. 60 at 54). A representation is material if it is important to the party to whom it was made in making a decision regarding the particular transaction. *Matis v. Golden*, 228 S.W.3d 301, 307 (Tex. App. 2007). Gomez testified at his deposition that he agreed to purchase the restaurant based on the numbers Saenz gave him, including the 2009 Income Statement. (ECF No. 60 at 49). This is sufficient to make a prima facie case for materiality.

*II. A genuine issue of material fact exists as to whether the representation was false*

The second element of fraud—falsity—is more contentious. In an attempt to demonstrate that the representation was false, Plaintiffs have produced bank statements from an account of Estrella Ventures, Inc. d/b/a Pizza Patron held at IBC. Both parties agree that Saenz used this account for the Rio Grande City Pizza Patron. As of January 1, 2009, the account had a balance of $3,560.73. (ECF No. 60 at 56). On September 30, 2009, the account's balance was $425.97. *Id.* at 78. Plaintiffs construe the fact that the bank account shrank by $3,134.76 during the time period represented by the Income Statement as proof that the restaurant itself was losing money. In addition, Gomez testified at his deposition that the restaurant's net income in 2010 was less than the purported net income in 2009. (ECF No. 54-1 at 82).

Even viewing this evidence in a light most favorable to Plaintiffs, it is apparent that a reasonable fact finder could not decide the representation was false under these facts. Although a profitable restaurant is more likely than an unprofitable one to have a healthy bank account, the absence of such an account is not dispositive of unprofitability. Indeed, Plaintiffs have produced

no evidence to counter a logical explanation of the discrepancy between the Income Statement and the bank records. Saenz testified at his deposition that when he ran the restaurant he would pull cash out of the registers weekly as a form of salary. (ECF No. 60 at 19). Although he could not recall exactly how much money he pulled out of the registers, he estimated that every week he would take out anywhere from $800 to $1500. *Id.* The weekly withdrawal of such a significant amount could largely explain why the restaurant's bank account did not reflect a large profit. Plaintiffs admit that Saenz testified to taking large amounts of cash from the register, but instead of providing any evidence to the contrary, they simply question Saenz's honesty. Saenz's honesty may be a valid defense at trial; at the summary judgment stage, the Court cannot make judgments about Saenz's credibility and must assume that his statements are true.

Nor do Plaintiffs provide any evidence that Saenz or the Rio Grande Pizza Patron did not maintain another bank account besides the IBC account. In Plaintiffs' response to IBC's summary judgment motion, they state that they served a discovery request *on IBC* to obtain the Rio Grande Pizza Patron's bank records. (ECF No. 60 at 4). If the Pizza Patron maintained a second bank account at a separate financial institution, merely asking IBC to provide financial information would go nowhere to find the second account. Counsel for Plaintiffs' made a representation at the January 26, 2015 hearing that he asked Saenz during Saenz's deposition about the existence of separate bank accounts. Saenz allegedly testified that there were none. A close examination of the record does not support this representation. Plaintiffs' counsel asked Saenz "[a]t the time that you were preparing the financial statements . . . were you banking at IBC?" (ECF No. 55 at 23). Saenz answered affirmatively, at which point counsel moved on to a different topic. Saenz banking at IBC does not preclude him from banking at another bank as well. Plaintiffs have produced no evidence that the IBC account was the restaurant's only bank

account, weakening their contention that the bank statement demonstrates the Income Statement's falsity.

However, Saenz's deposition testimony itself is sufficient evidence for a reasonable trier of fact to determine that the Income Statement was false. Saenz testified that he paid himself a cash salary and that IBC was aware of these withdrawals. When asked whether he advised "the people there at IBC Bank, or Ms. Gaona, that you were taking cash payments out every week," Saenz answered yes. (ECF No. 60 at 19). He further testified that he would fill out a form "like a purchase order" and make it out as a payment to himself, personally as an employee. *Id.* Saenz testified that he made the decision not to include his salary in the wages portion of the Income Statement.[3] *Id.* Because a credibility determination is not appropriate at the summary judgment stage, and because IBC has provided no evidence to refute this testimony, the Court accepts Saenz's testimony as accurate for the purposes of this opinion. By failing to account for Saenz's salary, IBC arguably made a false representation.

There is a substantial difference between a small business that earns $107,505.15 with a passive owner versus a business that earns the same profit with an owner who operates as a full-time employee and plays a significant role in day-to-day operations. If Company A and Company B make the same level of profit, yet Company B requires the owner to work full time to realize the same profits as Company A, Company B's economic performance is markedly worse than Company A's. Although the evidentiary record is not clear as to the amount of time Saenz put into the restaurant, he did testify that "you have to be owner/operator of a location like that," and that "[y]ou do have to get your hands dirty." (ECF No. 55-7 at 26). This implies that he put a significant amount of work into the company in order to generate the $107,505.15 in profit. If Saenz had been unwilling or unable to provide the necessary services, he would have

---

[3] The Income Statement lists total wages as $57,854.00.

had to pay an additional employee (or employees) to do so. Accordingly, by neglecting to include owner wages as an expense, the Income Statement may have distorted the true economic performance of the restaurant. A genuine issue of material fact exists concerning the accuracy of the Income Statement.

> *III. Plaintiffs have demonstrated sufficient issues of material fact for the remaining elements of fraud*

The third element of fraud is that the speaker knew the representation was false at the time of the representation, or made the representation recklessly. Saenz testified that he informed the loan officer of his salary and that he made the decision not to include it in the Income Statement. This is sufficient to show a genuine issue of material fact with regards to IBC's knowledge.

Plaintiffs have further raised a fact issue with regards to IBC's intent, the fourth element of fraud. Activity logs from IBC's loan officer (the same employee who helped Saenz prepare the income statement) for Saenz's account show that Saenz discussed an SBA loan with the loan officer as early as August 28, 2009. (ECF No. 60 at 29). The only SBA loan Saenz had any involvement with was Gomez's loan from Lone Star. In addition, Saenz testified that he told the loan officer he needed the Income Statement because he had located an interested buyer. The loan officer then helped Saenz prepare financial documents connected with the sale of that restaurant. Although there is no direct evidence that the loan officer intended for Gomez to rely on the Income Statement, intent may be inferred from the circumstances. *Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 376 (Tex. App. 2012). An IBC employee knew that she was helping Saenz prepare an Income Statement which would be given to a potential buyer. A reasonable fact finder could infer that IBC intended for Gomez to rely on the Income Statement.

The fifth element of fraud is reliance. At his deposition, Gomez testified that the numbers contained in the Income Statement "[were] very important because it showed the profit that he was making . . . up to September, which it showed that he was making over $10,000 a month." (ECF No. 60 at 46). Gomez further testified that "[that's] what I based my decision on, that if I was going to be able to make that amount on nine months, . . . that was a good deal." *Id*. IBC counters that the Income Statement could not have had such importance because Gomez also testified that the purchase price was "set in stone" before he even saw the Income Statement. *Id*. However, Gomez saw the Income Statement before the deal officially closed on October 15, 2009. If Gomez saw that the Pizza Patron was actually losing money, or turning only a middling profit, he could have backed out of the deal entirely or renegotiated a lower purchase price. Gomez's testimony that the Income Statement was "very important" to him is sufficient to make a prima facie case for reliance. This testimony also raises a fact issue with regards to the final issue of fraud, injury. Gomez has testified that he would have backed out of the deal had he been provided with an accurate Income Statement. In connection with the purchase, he obtained a $287,000 loan from Lone Star and committed $50,000 of his own. (ECF No. 60 at 45). He believes he lost approximately $150,000 due to the restaurant's failure. *Id*. The amount of money Gomez put into the deal and the extent of his losses has not been refuted. Accordingly, Plaintiffs have alleged sufficient facts to defeat a summary judgment motion.

### Conclusion

The Court will enter an order consistent with this memorandum opinion.

SIGNED **February 9, 2015.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE